IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DALLAS WAYNE SMITH,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0105

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.   *Smith's Education and Employment Background* . . . . . . . . . . . . . 4
     B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 4
          1.   *Smith's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . . 6
     C.   *Smith's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . 8
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 10
          1.   *The Opinions of Dr. Dunn* . . . . . . . . . . . . . . . . . . . . . . 11
          2.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 14
          3.   *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          4.   *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Dallas Wayne Smith on October 9, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Smith asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Smith requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On October 9, 2013, Smith filed this action for judicial review. The Commissioner filed an Answer on December 23, 2013. On January 24, 2014, Smith filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On March 21, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 31, 2014, Smith filed a reply brief. On October 25, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . with or without remanding the cause for a rehearing."
42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported
by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial
evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.
2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance
but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"
*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,
674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable
person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers
"all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."
*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not
only considers the evidence which supports the ALJ's decision, but also the evidence that
detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012);
*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision
"extends beyond examining the record to find substantial evidence in support of the ALJ's
decision; [the court must also] consider evidence in the record that fairly detracts from that
decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth
Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the
> evidence and it allows for the possibility of drawing two
> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland
v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th
Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial

of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Smith's Education and Employment Background

Smith was born in 1979. He did not graduate from high school, but later earned a GED. His past relevant work includes construction worker, store clerk/store manager, forklift operator, and car lot attendant.

### B. Administrative Hearing Testimony

#### 1. Smith's Testimony

At the administrative hearing, Smith testified that on August 23, 2005, he was working on a ladder, fell 12 feet, and fractured his L1 vertebrae. Immediately following the fall, Smith was paralyzed from the waist down. He underwent spinal surgery. Smith explained that "I got two titanium rods, four bolts and a screw; and then, like, seven or eight plastic rings that make up the L1 vertebrae; and then they used part of my rib and

4

grafted that into my spine."[1] Smith's attorney inquired about Smith's recovery following the surgery:

> Q: So after surgery, were you in a wheelchair?
> A: Yes.
> Q: For about how long?
> A: Probably six to eight months, somewhere in that range.
> Q: Okay. And I take it you couldn't walk.
> A: No.
> Q: And then were you eventually able to use a walker?
> A: Yes.
> Q: Okay. And how long were in a walker?
> A: A very good part of the next year.
> Q: Okay.
> A: And I started kind of switching myself off, using the cane and the walker towards the end of that[.] . . .
> Q: And do you have the cane with you right now?
> A: Yes, I do.
> Q: And do you use the cane all the time?
> A: Pretty much. I always take it with me when I go places, and it helps me, like, going up and down steps, things like that, because I tend to [] lose my balance a little bit and get a little wobbly and [] when I'm on steps or if I'm walking -- if I'm -- especially if I'm walking on a sidewalk or something if there's nothing to hold onto or anything like that, then I'll start kind of wobbling. I start to lose my balance more or less.

(Administrative Record at 37-38.) According to Smith, he can only walk about 1 block before needing to use his cane for assistance with walking. Smith also stated that he has weakness, numbness, and pain in his feet and legs. Smith further testified that he suffers from pain in his back, particularly with prolonged sitting.

---

[1] Administrative Record at 37.

## 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for an individual who is:

> limited to sedentary work with the following limitations: occasionally lift/carry 10 pounds, . . . frequently less than 10 pounds; stand walk at least two hours in an eight-hour workday; sit with normal breaks a total of about six hours in an eight-hour workday; push/pull up to lift/carry restriction; occasionally climbing ramps, stairs, balancing, stooping, kneeling, crouching, crawling; never climbing ladders, ropes, scaffolds; avoid concentrated exposure to hazards -- that's machinery and heights.

(Administrative Record at 58.) The vocational expert testified that under such limitations, Smith would be precluded from performing his past relevant work, but could perform the following jobs: (1) telemarketer (4,000 positions in Iowa and 340,000 positions in the nation), (2) information aide (380 positions in Iowa and 55,000 positions in the nation), and (3) calculating machine operator (2,200 positions in Iowa and 245,000 positions in the nation).

## C.  *Smith's Medical History*

On October 8, 2010, Smith met with Dr. Christopher Dunn, M.D., his primary care physician, for a disability examination. In reviewing Smith's medical history, Dr. Dunn noted that:

> [Smith] has unfortunately sustained an L1 burst fracture. He fell off a roof approximately 10 feet to the ground. . . . He developed a near-immediate difficulty with urination. He subsequently underwent an L1 corpectomy and spinal canal decompression with rib harvest with a transthoracic and transperitoneal approach on 08/29/2005. This ultimately resulted in a T12-L2 fusion. He was discharged to St. Luke's in Cedar Rapids for rehabilitation and initially made a significant amount of progress with physical therapy. Postoperatively and postrehabilitation, [Smith] attempted to

> make a return to his normal activities and was able to do so for
> a period of time. He believes at least 1-2 years. He is
> continuing to have ongoing difficulties with urinary and sexual
> function. He continues to require 4-to 5-time per day straight
> catheterization due to neuorgenic bladder despite aggressive
> urologic management. He has had a gradual and progressive
> increase in pain associated with a decrease in range of motion,
> mobility, and pain tolerance. He is now quite incapacitated by
> his low back pain.

(Administrative Record at 242.) Upon examination, Dr. Dunn diagnosed Smith with

history of L1 burst fracture, subsequent surgical repair, and resultant paraplegia secondary

to cauda equina syndrome. Dr. Dunn also found that Smith "has significant limitations in

his range of motion, mobility, as well as ability to ambulate[.]"[2] Dr. Dunn concluded

that:

> [Smith] has been having progressively worsening pain in his
> back over the past few years. I would expect that he would
> have significant limitations in standing, moving about,
> walking, and sitting as well as stooping, climbing, kneeling,
> and crawling. Handling objects would not be difficult. He
> should have no difficulty seeing, hearing, or speaking.
> Traveling likely would present difficulties. He would have no
> limitations in work environment.

(Administrative Record at 242.)

On December 21, 2010, Dr. C. David Smith, M.D., reviewed Smith's medical

records and provided Disability Determination Services ("DDS") with a physical residual

functional capacity ("RFC") assessment for Smith. Dr. Smith determined that Smith

could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less

than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an

eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-

hour workday, and (5) push and/or pull without limitations. Dr. Smith opined that Smith's

---

[2] Administrative Record at 242.

medically determinable impairment is severe, "despite the absence of close follow up. Sustained walking, standing, climbing, stooping, and other work in postures can be expected to be limited due to what appears to be diffuse loss of motor units due to the traumatic spinal cord injury. . . . He would be able to sustain work at the level outlined."[3] Dr. Smith also determined that Smith could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Smith further indicated that Smith should avoid concentrated exposure to hazards such as machinery and heights. Dr. Smith found no manipulative, visual, or communicative limitations.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Smith is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not

---

[3] Administrative Record at 252.

disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

9

The ALJ applied the first step of the analysis and determined that Smith had not engaged in substantial gainful activity since July 7, 2009. At the second step, the ALJ concluded from the medical evidence that Smith has the following severe impairments: status-post L1 burst fracture and status-post corpectomy and fusion with paraparesis. At the third step, the ALJ found that Smith did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Smith's RFC as follows:

> [Smith] has the residual functional capacity to perform sedentary work . . . such that he could occasionally lift and carry 10 pounds and less than 10 pounds frequently; stand and walk at least 2 hours in an 8 hour day; sit with normal breaks 6 hours in an 8-hour workday; push and pull within the aforementioned weights; occasionally balance, stoop, and climb stairs and ramps but never climb ladders, ropes or scaffolds and never kneel, crouch or crawl; and must avoid concentrated exposure to hazards such as heights and machinery. He should be able to shift postural position without leaving the work place and having no lost [sic] of productivity.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Smith was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Smith could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Smith was not disabled.

### B. Objections Raised By Claimant

Smith argues that the ALJ erred in four respects. First, Smith argues that the ALJ failed to properly consider the opinions of his treating physician, Dr. Dunn. Second, Smith argues that the ALJ failed to properly evaluate his subjective allegations of disability. Third, Smith argues that the ALJ's RFC determination is not supported by substantial evidence in the record because the record was not fully and fairly developed.

Lastly, Smith argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. The Opinions of Dr. Dunn

Smith argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Dunn. Specifically, Smith argues that the ALJ failed to properly weigh Dr. Dunn's opinions. Smith also argues that the ALJ's reasons for discounting both of Dr. Dunn's opinions are not supported by substantial evidence in the record. Smith concludes that this matter should be remanded for further consideration of Dr. Dunn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or

disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ thoroughly reviewed and addressed the opinions of Dr. Dunn.[4] For example, the ALJ noted that in March 2010, Smith met with Dr. Dunn regarding back pain, but "declined any pain medication [and] . . . required no further

---

[4] *See* Administrative Record at 14-16 (providing a thorough discussion of Dr. Dunn's treatment of Smith).

12

follow-up related to thoracic pain."[5] Furthermore, the ALJ pointed out that in conjunction with Dr. Dunn's disability evaluation from June 2010, radiographic imagining studies comparing images from August 2005 and June 2010, "revealed normal alignment status-post fixation without hardware compromise as well as maintained vertebral body heights."[6] Finally, the ALJ noted that in June 2011, Dr. Dunn considered Smith's complaints of bilateral foot pain and found "no weakness in the ankles, no ligament instability, no tenderness in the bilateral feet and no abnormal alignment."[7] With regard to Dr. Dunn's opinions, the ALJ concluded that:

> As for the opinion evidence, the undersigned has considered the opinion of Dr. Dunn subsequent to the consultative examination in the absence of ongoing treatment as well as the statement within the treatment notes that [Smith's] physical disability was such that he was incapable of performing substantial gainful activity and had made a commendable effort in returning to work. Little weight has been accorded to these statements based on the inconsistencies per [Smith's] report of functional abilities during the relevant period as well as the objective findings on physical and neurological evaluations. The undersigned has taken further notice of the contradiction in terms that [Smith] was incapable of performing substantial gainful activity but able to perform the usual physical activities of an individual the same age as [Smith].[8]

(Administrative Record at 18.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Dunn. Also, the Court finds the ALJ

---

[5] Administrative Record at 14.

[6] *Id.* at 15.

[7] *Id.* at 16.

[8] *Id.* at 270 (treatment note providing contradictory statement about ability to perform age appropriate activities, but unable to perform substantial gainful activity).

provided "good reasons" for rejecting Dr. Dunn's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

## 2. *Credibility Determination*

Smith argues that the ALJ failed to properly evaluate his subjective allegations of disability. Smith maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Smith's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the

objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Smith's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Smith's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The undersigned finds [Smith] credible to the extent that he experiences chronic persistent symptoms status-post traumatic spine injury and lumbar fusion. Radiographic imaging studies noted stability and alignment. Although [Smith] stated he required straight catheterization up to 4 to 5 times per day, he experienced no complications and required no further treatment interventions beyond medication management which remained unchanged. In addition, [Smith] was involved in physical activities including tearing up carpet, moving furniture and vacuuming which exceed his reported limitations. Although seeking treatment options related to issues involving the feet and ankles, the record documented that he opted only for medication management for neuropathic pain. There was no medical need for assistive devices documented. Gait and station were noted as normal in subsequent treatment notes. In addition, although [he] had a cane at the hearing; however, he was observed to carry the cane when he left the hearing. Further, he was able to sustain employment as a gas station attendant for 8 months, a position that required constant standing.

In addition, he received unemployment compensation subsequent to his last employment when he alleges that he was disabled. . . .

When [Smith] applied for unemployment compensation he had to assert that he was able to work. Such an assertion constitutes an admission against the interests of any individual claiming the inability [to] work because of a medically determinable physical or mental impairment as required to qualify for Social Security disability benefits. Applying for unemployment compensation does not prove by itself that the applicant is not disabled. Nevertheless, it is compelling and seriously undermines a claimant's assertion that he is incapable of working in competitive employment.

For the aforementioned reasons, the undersigned finds [Smith] less than fully credible.

(Administrative Record at 17-18.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Smith's treatment history, medical history, functional restrictions, effectiveness of medications and other treatments, activities of daily living, and employment history in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Smith's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Smith's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. RFC Assessment

Smith argues generically that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Smith argues that the ALJ failed to fully and fairly develop the record in this case, by not properly considering Dr. Dunn's opinions or properly evaluating his subjective allegations of disability. Smith does not point to any specific or identifiable flaw in the ALJ's RFC assessment; but instead, asserts that "[t]here is documented evidence of all the complaints that Smith has reported on an ongoing basis.

However, the record has not been fully developed."[9] Smith concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.").

---

[9] Smith's Brief (docket number 14) at 23.

"There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Smith's RFC, the ALJ thoroughly addressed and considered his medical history, referencing Smith's 2005 back injury and outlining his treatment for back, leg, and foot pain from 2010 to 2012.[10] Furthermore, as discussed in sections *V.B.1* and *V.B.2*, and contrary to Smith's assertions, the ALJ properly considered the opinions of Dr. Dunn and Smith's subjective allegations in making his overall disability determination, including determining Smith's RFC. Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Smith's medical records, observations of treating physicians, and Smith's own description of his limitations in making the ALJ's RFC assessment for Smith.[11] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Smith's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

### 4. Hypothetical Question

Smith argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Smith also argues that the ALJ's hypothetical was incomplete and did not contemplate all of his

---

[10] *See* Administrative Record at 14-16 (providing a thorough discussion of Smith's overall medical history and treatment).

[11] *Id.* at 14-18 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

functional limitations. Smith maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Smith's testimony in determining Smith's impairments.[12] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## VI. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Dunn. The ALJ also properly determined

---

[12] *See* Administrative Record at 14-18.

Smith's credibility with regard to his subjective complaints of disability. The Court further finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___ day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA